UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| CHRISTOPHER REA, *Pro se,* | ) | CASE NO. 4:06 CV 2424 |
| | ) | |
| Petitioner, | ) | JUDGE SOLOMON OLIVER, JR. |
| | ) | |
| v. | ) | |
| | ) | MEMORANDUM OF OPINION |
| | ) |  AND ORDER |
| T.R. SNIEZEK, | ) | |
| | ) | |
| | ) | |
| Respondent. | ) | |

    Pro se Petitioner Christopher Rea filed the above-captioned petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241. Mr. Rea, who is incarcerated at the Federal Correctional Institution in Elkton, Ohio (F.C.I. Elkton), brings this action against F.C.I. Elkton Warden T. R. Sniezek. Petitioner asserts that an unwritten Bureau of Prisons (BOP) policy limiting a prisoner's eligibility for placement in a Residential Drug Abuse Program (RDAP) based on evidence of substance abuse within 12 months of prisoner's incarceration is in contravention of 18 U.S.C. § 3621(e).

*Background*

Some time after his placement at F.C.I. Elkton, Mr. Rea submitted a request for placement in a RDAP. In a Notice of Residential Drug Abuse Program Qualification and Provisional § 3621(e) Eligibility, dated February 27, 2006, F.C.I. Elkton physician A. Enoch-Morris advised Mr. Rea that his request was denied. In the Notice, Dr. Enoch-Morris explained that Petitioner did not meet the admission criteria for a RDAP and, therefore, was not qualified to participate in the residential program. This determination was made after reviewing Mr. Rea's Central File, Presentence Investigation Report (PSI), and the supplemental information he provided regarding his substance use. The BOP concluded that there was insufficient documentation to justify the diagnosis of substance abuse or dependence "within the required time frame." (Pet. Atth. B at 1.)

Mr. Rea responded by soliciting a letter from his personal physician, Dr. Nevarez-Tapia, indicating that he had an extensive history of substance abuse. With a copy of Dr. Nevarez-Tapia's letter attached, he informally attempted to resolve the matter through the F.C.I. Elkton staff. When these efforts failed, Petitioner completed the process of administrative exhaustion through the BOP.

In his Response to Mr. Rea's Request for Administrative Remedy, Warden Sniezek advised that Petitioner's PSI indicated that he did not have sufficient documentation to support a diagnosis of substance abuse. Moreover, he noted that the supplemental information furnished by Dr. Nevarez-Tapia was based on an evaluation between October 22, 2000, and October 29, 2000. Referencing BOP Program Statement 5330.10, <u>Drug Abuse Program Manual, Inmate</u>, wherein an inmate "must meet the diagnostic criteria for substance abuse or dependence indicated in the

Diagnostic and Statistical Manual of Mental Disorder (DSM-IV)," Warden Sniezek noted that Mr. Rea's evidence of substance abuse did not occur within the requisite time frame of 12 months from the July 29, 2002, date of his arrest.

In his appeal to the Regional Director, D. Scott Dodrill, Mr. Rea argued that his entire history of substance abuse should be taken into consideration when determining his qualifications for a RDAP. In response, Mr. Dodrill noted that before an inmate is admitted to a RDAP the BOP examines the prisoner's PSI to see whether the inmate self-reported a drug addiction and documentation of substance abuse. Any documentation must indicate that the inmate used the same substance for which a provisional diagnosis of abuse was made when the inmate self-reported. Finally, the substance abuse must have occurred during the target period of the last 12 consecutive months in the community. The Administrator for National Inmate Appeals, Harrell Watts, concurred and denied Mr. Rea's appeal at the final stage.

*Analysis*

Mr. Rea now asserts that while Program Statement 5330.10 sets forth that an inmate must be diagnosed according to the DSM-IV in order to be eligible to participate in an RDAP, "there is no such diagnostic criteria listed in the DSM-IV, nor is there any such rule in BOP policy." (Pet. at 3.) He further contends that because 18 U.S.C. § 3621 mandates that the BOP "shall" provide residential substance abuse treatment for all eligible prisoners, the BOP is obligated to provide him with residential drug treatment. Mr. Rea claims that the BOP has disregarded information that suggests he is eligible for placement in a RDAP and that they have maintained that "'it is not their job' to track down information pertaining to proof of substance abuse." (Pet. at 3.) Petitioner concludes that the BOP is acting in contravention of 18 U.S.C. § 3621 by requiring formal

3

documentation of an inmate having a substance abuse problem during the 12 months preceding his incarceration.

Citing a case in the Ninth Circuit Court of Appeals, Mr. Rea acknowledges that the BOP has "broad discretion over the entire treatment process within the federal correction system." Downey v. Crabtree, 100 F.3d 662, 666 (9th Cir. 1996). He points out that the Supreme Court has held, however, that this discretion must be within the parameters of the BOP's statutory authority. See SEC v. Sloan, 436 U.S. 103 (1978). It is Mr. Rea's contention that the BOP has abused its discretion by requiring that an inmate have a substance abuse problem "during the last 12 months prior to an inmate['s] arrest."

*28 U.S.C. § 2243*

A court entertaining an application for a writ of habeas corpus "shall forthwith award the writ or issue an order directing the respondent to show cause why the writ should not be granted, unless it appears from the application that the applicant or person detained is not entitled thereto." 28 U.S.C. § 2243. Under this provision, a district court has a duty to screen out a habeas petition which should be dismissed for lack of merit on its face. Allen v. Perini, 424 F.2d 134, 141 (6th Cir.1970). Considering prevailing case law, it appears conclusively that Christopher Rea 'is not entitled thereto.' Thus, there is no need for consideration of a return on the writ. 28 U.S.C. § 2243. In this case, the allegations do not involve factual matters beyond the knowledge of this court. Thus, requiring a return from the Government would not contribute to the resolution of the issue.

*18 U.S.C. § 3625*

With regard to this court's jurisdiction over any challenge to an agency's actions, there is a general presumption that any agency action is subject to judicial review. However, where

4

Congress has specifically precluded review or committed agency action to discretion by law a federal court lacks jurisdiction. Wallace v. Christensen, 802 F.2d 1539, 1542 (9th Cir.1986) (en banc) (quoting Heckler v. Chaney, 470 U.S. 821, 828-29 (1985)). The Supreme Court has instructed that only "clear and convincing evidence" of Congress' intent to foreclose judicial review will overcome the general presumption that it is available. Abbot Laboratories v. Gardner, 387 U.S. 136, 141 (1967); see Bowen v. Michigan Acad. of Family Physicians, 476 U.S. 667, 673 (1986); Block v. Community Nutrition Institute, 467 U.S. 340, 349-51 (1984).

The statutory provision governing substance abuse treatment for federal prisoners, 18 U.S.C. § 3621(e), was enacted as part of the Sentencing Reform Act of 1984. The issue of jurisdiction arises because section 3625 of title 18, also enacted as part of the Sentencing Reform Act, provides that "[t]he provisions of sections 554 and 555 and 701 through 706 of title 5, United States Code, do not apply to the making of any determination, decision, or order under this subchapter."[1] The relevant sections of title 5, as set forth in section 3625, are cornerstones of the APA: sections 554 and 555 set forth the procedures which are to guide agency rule-making and adjudication; sections 701 through 706 govern judicial review of agency action. Therefore, by express provision, section 3625 establishes that the APA does not apply to decisions made under section 3621(e). Moreover, the controlling law in this court sets forth that 18 U.S.C. § 3625 removes this court's subject matter jurisdiction to review the BOP's substantive eligibility decisions.

---

[1] This is a reference to the Administrative Procedures Act (APA), which provides that "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof." 5 U.S.C. § 702.

Davis v. Beeler, 966 F.Supp. 483 (E.D.Ky.1997), and United States v. Jackson, 70 F.3d 874 (6th Cir.1995).

Where, as here, Congress has precluded judicial scrutiny of an agency's decision-making, the court's review is very limited and it may only consider whether the agency acted outside its statutory limits or violated the constitution. Wallace, 802 F.2d at 1551-52; accord United States v. Bozarov, 974 F.2d 1037, 1044-45 (9th Cir.1992) (colorable constitutional claim reviewable even where judicial review ostensibly precluded by statute) (citing Webster v. Doe, 486 U.S. 592, 602-05(1988)). Therefore, this Court has jurisdiction to review Mr. Rea's claim to the extent he alleges that Respondent has acted "beyond the scope of discretion granted by Congress." Wallace, 802 F.2d at 1542. Based on a review of the Petition before this court, Mr. Rea has failed to allege facts supporting the conclusion that Respondent acted outside the scope of discretion granted by Congress.

*18 U.S.C. § 3621*

It was under the direction of Congress in 1990 that the BOP was tasked to "make available appropriate substance abuse treatment for each prisoner the Bureau determines has a treatable condition of substance addition or abuse." 18 U.S.C. § 3621(b). The determination of what was "appropriate" treatment for each prisoner was left to the BOP's broad discretion. With the passage of the Violent Crime Control and Law Enforcement Act of 1994 (VCCLEA), the statute was amended to encourage prisoner enrollment and completion of the program. To encourage enrollment, prisoners convicted of non-violent offenses were made eligible by Congress for a reduced period of incarceration, not to exceed one year, after successfully completing a residential treatment program. See H. R. Nos. 103-324 and 103-489 (1994);18 U.S.C. § 3621(e)(2)(B).

With regard to a RDAP, the statute mandated that the BOP "shall" provide a "residential substance abuse treatment" for all "eligible prisoners." 18 U.S.C. § 3621(e)(1)(C). The term "eligible prisoner" is defined as "a prisoner who is– (i) determined by the Bureau of Prisons to have a substance abuse problem; and (ii) willing to participate in a residential substance abuse treatment program." 18 U.S.C. § 3621(e)(5)(B). It is clear, therefore, that Congress entrusted the BOP to select which prisoners would best be served by participating in such a program.

Because section 3621 does not outline any criteria for determining whether an inmate has a "substance abuse problem," the BOP filled that void by exercising its broad discretion and establishing its own criteria to determine who would qualify as an eligible prisoner. The regulations adopted by the BOP describe the nature of the residential drug abuse treatment program and provide the following qualifications:

> (a) Eligibility. An inmate must meet all of the following criteria to be eligible for the residential drug abuse treatment program.
>> (1) The inmate must have a verifiable documented drug abuse problem.
>> (2) The inmate must have no serious mental impairment which would substantially interfere with or preclude full participation in the program.
>> (3) The inmate must sign an agreement acknowledging his/her program responsibility.
>> (4) Ordinarily, the inmate must be within thirty-six months of release.
>> (5) The security level of the residential program institution must be appropriate for the inmate.

28 C.F.R. § 550.56 (2007). The BOP determined that Mr. Rea was not eligible for the RDAP because he did not have a verifiable documented drug abuse problem. Petitioner now challenges the BOP's determination based on its reliance on Program Statement 5330.10 and its unwritten policy that: (1) requires documentary verification of the prisoner's abuse of alcohol, and (2) focuses

7

on the 12-month period preceding his arrest or incarceration, requiring verification about the abuse or use taking place only during that time period.

*BOP Program Statement 5330.10*

After setting forth each of the five requirements listed in the Code of Federal Regulations, the program statement then adds defining language. Under the first component, "The inmate must have a verifiable documented drug abuse problem," the policy explains:

> Drug abuse program staff shall determine if the inmate has a substance abuse disorder by first conducting the *Residential Drug Abuse Program Eligibility Interview* followed by a review of all pertinent documents in the inmate's central file to corroborate self-reported information. The inmate must meet the diagnostic criteria for substance abuse or dependence indicated in the *Diagnostic and Statistical Manual of the Mental Disorders, Fourth Edition, (DSM--IV).* This diagnostic impression must be reviewed and signed by a drug abuse treatment program coordinator.
>
> Additionally, there must be verification in the Presentence Investigation (PSI) report or other similar documents in the central file which supports the diagnosis. Any written documentation in the inmates' central file which indicates that the inmate used the same substance, for which a diagnosis for abuse or dependence was made via the interview, shall be accepted as verification of a drug abuse problem.

P.S. 5330.10 at 5.4.1.

The BOP's review of Mr. Rea's Central File and PSI did not verify or support a diagnosis of substance abuse. According to Warden Sniezek, there was no evidence of drug abuse within the required 12 months prior to Petitioner's arrest, which would have been from July 29, 2002, until July 29, 2003. He explained that under the Substance Abuse section of Petitioner's PSI, Mr. Rea last used alcohol abusively in 2000, last smoked marijuana in 1999, used steroids from 1987 until 2001, abused opiates from 1998 until 2000, and last used Ketamine in October 2001. He

added that Mr. Rea last reported using any illicit substance in 2001, disclosing that he "stopped on his own and sobered up." When the Warden examined the information from Petitioner's psychiatrist, it revealed that the evaluation covered the period from October 22, 2000,until October 29, 2000, which was also beyond the required 12 month time frame. Moreover, the psychiatrist's diagnosis was "Polysubstance Dependence, in remission, which indicates that you were not using substances at the time of the evaluation." (Pet.'s Atth. A., Letter from Sniezek to Rea of 5/15/06, at 1.) Consequently, because Petitioner had no documentation in his PSI of substance abuse within the 12-month period prior to his arrest, he was found not eligible for RDAP. Under this policy, the BOP determined that petitioner did not meet the first requirement in the regulation by demonstrating "a verifiable documented drug abuse problem,"because his documentation was not for "the last 12 months prior to arrest and/or incarceration." Id. The Warden closed his response stating, "If additional documentation is obtained concerning your substance abuse history occurring within the required time frame, then your eligibility for the RDAP will be reconsidered at that time." Id.

In a factually analogous case before the United States District Court for the Eastern District of Kentucky, the court held that "[t]he requirement that the abuse occurred in the 12-month pre-incarceration period of time does not contradict the DSM-IV definition of substance abuse." Laws v Barron, 348 F.Supp.2d 795, 805 (E.D. Ky. 2004).[2] The district court further noted that the

---

[2] The Laws court went on to note that, "common sense would dictate that entry into the most rigorous program would be restricted to those prisoners having a recent history of abuse, rather than one who can demonstrate that he had a substance abuse problem 4 to 9 years prior to arrest and 7 to 12 years prior to incarceration." 348 F.Supp.2d at 805.

consistency with which the BOP imposed these eligibility requirements across the nation supported the reasonableness of its decision.

As further guidance, this court looks to the conclusion reached by the Supreme Court and other lower courts in evaluating other portions of section 3621 and the BOP's discretionary authority therein. Addressing the early release provision under 18 U.S.C. § 3621(e)(2)(B), the Supreme Court noted that Congress gave the BOP discretion in its determinations of eligibility for early release, and "Congress has not identified any further circumstance in which the Bureau either must grant the reduction, or is forbidden to do so." Lopez v. Davis, 531 U.S. 230, 242 (2001).

When addressing the question of whether the BOP exercised its discretion within the prescribed parameters of its statutory authority, some deference must be paid even when "the Bureau's interpretation appears only in a 'Program Statemen[t]'--an internal guideline--rather than in 'published regulations subject to the rigors of the Administrative Procedur[e] Act, including public notice and comment.'" Reno v. Koray, 515 U.S. 50, 61 (1995).[3] It is a reasonable exercise of the BOP's statutory discretion to determine who among the prison population has "a substance abuse problem" and to choose appropriate treatment for each prisoner who claims to need treatment. See 18 U.S.C. § 3621(b); 28 C.F.R. § 550.26.

In this case, the BOP applied the same criteria to Mr. Rea as it did to any prisoner seeking placement in a residential treatment program. Moreover, he was not summarily denied substance abuse treatment, but only denied enrollment in a residential drug treatment program. Harrell Watts expressly advised Mr. Rea that "you are encouraged to participate in nonresidential

---

[3] The Reno court defined a Program Statement as "an internal agency guideline, . . . akin to an 'interpretive rule' that . . . is still entitled to some deference, since it is a 'permissible construction of the statute." 515 U.S. at 61.

10

drug abuse treatment services available at your institution." (Pet. Atth. A., Letter from Watts to Rea of 9/15/06)(emphasis added.) Inasmuch as this court has no authority to direct the placement of prisoners, the fact that a non-residential drug treatment program is not Mr. Rea's first choice is not a matter within this court's subject matter jurisdiction. See 18 U.S.C. § 3621.[4]

Upon due consideration of these facts, the rules under which Petitioner was deemed ineligible for a RDAP are permissible for the BOP to apply to a prisoner under the relevant statute and the application of these standards to deny him eligibility for the RDAP was reasonable. The fact that the basis upon which the BOP reached its determination does not appear in the relevant statute, regulation, or program statement, does not alter this conclusion. The BOP's interpretation of the term "a verifiable documented substance abuse program" in 18 U.S.C. § 3621(e)(5)(B), to require documentation of substance abuse in the 12 months prior to incarceration, does not contravene controlling and well-settled law.

Based on the foregoing, Petitioner's claims are denied and this action is dismissed pursuant to 28 U.S.C. § 2243. The court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision could not be taken in good faith.

IT IS SO ORDERED.

                */S/ SOLOMON OLIVER, JR.*
                UNITED STATES DISTRICT JUDGE

February 2, 2007

---

[4] The statute provides, in relevant part: "The Bureau of Prisons shall designate the place of the prisoner's imprisonment. The Bureau may designate any available penal or correctional facility that meets minimum standards of health and habitability established by the Bureau . . .,". 18 U.S.C. § 3621 (emphasis added).